## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ALLENTOWN SMSA LIMITED PARTNERSHIP d/b/a VERIZON WIRELESS, <br><br> Plaintiff, <br><br> v. <br><br> LOWER SAUCON TOWNSHIP, LOWER SAUCON TOWNSHIP COUNCIL, and THE LOWER SAUCON TOWNSHIP ZONING HEARING BOARD, <br><br> Defendants. | Civil Action No. _____ <br><br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND EXPEDITED REVIEW PURSUANT TO 47 U.S.C. § 332(c)(7)(B)(v)** |

Plaintiff ALLENTOWN SMSA LIMITED PARTNERSHIP d/b/a VERIZON WIRELESS ("Plaintiff" or "Verizon"), by its attorneys, Fitzpatrick, Lentz & Bubba, P.C., and Snyder and Snyder, LLP, as and for its Complaint against defendants LOWER SAUCON TOWNSHIP (the "Township"), LOWER SAUCON TOWNSHIP COUNCIL (the "Council"), and THE LOWER SAUCON TOWNSHIP ZONING HEARING BOARD (the "ZHB") (collectively, "Defendants") respectfully alleges as follows:

### NATURE OF THE ACTION

1. The nation's wireless infrastructure is a critical communications pathway extensively employed and heavily relied on by the public—including residents and businesses, the traveling public, emergency service providers, hospitals and health care professionals, law enforcement personnel, government officials, and the 911 North American emergency system. Both Congress and the Federal Communications Commission ("FCC") have emphasized the importance of a seamless nationwide wireless network and the need to allow wireless carriers to move quickly to construct needed facilities.

2.      This action arises from Defendants' unreasonable and unsupportable denial of Verizon's application for conditional use approval from the Council (the "Conditional Use Application") for the installation of Verizon's tower-based wireless telecommunications facility, including an unmanned 125-foot monopole (having an overall height of 130 feet factoring in a 5-foot lightning rod) with an approximately 750-square-foot equipment compound enclosed by an eight-foot high chain link fence at the base thereof (the "Facility"), on the more than ten-acre property located at 4235 Lewis Avenue, Bethlehem, Pennsylvania, 18015 (the "Property"), pursuant to the terms of a certain Land Lease Agreement (the "Lease") between Verizon and Rocco A. and Heather Viscito (the "Property Owners"), dated March 10, 2023, as amended.

3.      The Facility is a personal wireless services facility that will provide personal wireless services ("Personal Wireless Services") and telecommunication services ("Telecommunications Services"), as those terms are defined in 47 U.S.C. §§ 332(c)(7)(C) and 153(53), respectively.

4.      The proposed Facility is necessary to remedy a significant gap in reliable wireless service and to meet demand for Personal Wireless Services and Telecommunications Services.

5.      The Facility is the least intrusive means to remedy the significant gap in service.

6.      Without the Facility, Verizon will be materially inhibited or limited from providing its Personal Wireless Services and Telecommunications Services.

7.      The Conditional Use Application satisfied the criteria for approval under the Township's Zoning Ordinance (the "Zoning Ordinance").

8.      For that reason, the Township Planning Commission ("Planning Commission") recommended conditional use and site plan approvals of the Facility conditioned on satisfying certain comments raised by the Township Engineer, Brien Kocher, of Hanover Engineering.

9.      Verizon satisfied the comments required for conditional use approval and confirmed that it would satisfy the remaining comments during the subsequent site plan approval process.

10.     Despite Verizon meeting the specific and general conditional use requirements of the Zoning Ordinance, the Council voted to not approve the Conditional Use Application and provided a copy of its written Decision (the "Denial") to Verizon's counsel via e-mail on May 3, 2024.

11.     Furthermore, the Council failed to set forth in the Denial or in any other written record, the reasons for its denial of the Conditional Use Application.

12.     Defendants have violated Section 704 of the Communications Act of 1934, as amended by the Telecommunications Act of 1996 (the "Act") and codified at 47 U.S.C. §§ 253(a) and 332(c) ("§ 253(a)" and "§ 332(c)", respectively).   Specifically, Defendants have prohibited and/or effectively prohibited Verizon's provision of personal wireless services and telecommunications services, denied the Conditional Use Application without substantial evidence contained in the written record, illegally based the Denial upon the federally preempted issue of environmental effects of radio frequency ("RF") emissions, and imposed unreasonable and prohibitive application and code requirements that materially inhibit or limit Verizon's ability to provide Personal Wireless Services and Telecommunications Services to the public, all of which, individually, warrant injunctive relief mandating that Defendants issue all required approvals for the construction of the Facility pursuant to the Act.

13.     Furthermore, the Denial was arbitrary, capricious, an abuse of discretion, contrary to law, and not supported by substantial evidence, and thus, in violation of Pennsylvania State law.

14.     Verizon respectfully requests that this Court enter a declaratory judgment that the Council's Denial of the Conditional Use Application violates §§ 332(c) and 253(a), is preempted by the same and by the regulations and orders of the FCC, and is unlawful under Pennsylvania State law.

15.     Verizon further respectfully requests that this Court issue permanent injunctive relief: (a) reversing the Council's Denial of the Conditional Use Application and directing Defendants to issue all approvals and permits necessary to construct and operate the Facility; and (b) prohibiting Defendants, and any officer, employee, or agent of the Defendants, from taking any further action that would prohibit or have the effect of prohibiting Verizon from providing Personal Wireless Services and Telecommunications Services to the Township and surrounding areas from the Facility.

16.     Verizon further respectfully requests that this Court enter an Order awarding Plaintiff any and all damages and interest to which the Plaintiff is lawfully entitled, together with such other and further relief as the Court deems just and proper.

17.     Verizon is entitled to an expedited review of this action pursuant to § 332(c)(7)(B)(v) of the Act, which provides that "[t]he court shall hear and decide such action on an expedited basis."

18.     This action is ripe for determination under the Act and was timely filed.

## THE PARTIES

19.     Verizon is a limited partnership formed under the laws of the State of Delaware, which has been authorized to do business in the State of Pennsylvania and maintains its principal place of business at One Verizon Way, Basking Ridge, New Jersey 07920.  Verizon is licensed by the FCC to construct and operate personal wireless service facilities throughout the United

States, including in the State of Pennsylvania and specifically the Township, in order to provide Personal Wireless Services and Telecommunications Services to the public.

20.     Defendant Township is a municipal corporation of the State of Pennsylvania with an address at 3700 Old Philadelphia Pike, Bethlehem, Pennsylvania 18015.

21.     Defendant Council is a municipal agency of the Township that has been delegated the authority to, among other things, grant conditional use approval for personal wireless services facilities, such as the Facility, in the Township.  The Council has an address at 3700 Old Philadelphia Pike, Bethlehem, Pennsylvania 18015.

22.     Defendant ZHB is a municipal agency of the Township that has been delegated the authority to, among other things, grant variances in the Township.  The ZHB has an address at 3700 Old Philadelphia Pike, Bethlehem, Pennsylvania 18015.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over this action pursuant to: (i) 47 U.S.C. § 332(c)(7)(B)(v) of the Act, because Verizon has been adversely affected and aggrieved by Defendants' actions in violation of 47 U.S.C. §§ 332(c)(7)(B) and 253(a); and (ii) 28 USC § 1331, because this is a civil action that presents federal questions arising under the Act.

24.     The Court has supplemental jurisdiction over all Pennsylvania state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).

25.     This Court has authority to issue declaratory judgment and injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202.

26.     This Court has personal jurisdiction over Defendants because Defendants are domiciled within the state of Pennsylvania and because the claims stated herein arise out of the acts and/or omissions committed by Defendants in the state.

27.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because: (1) the property that is the subject of this action is located in the judicial district for the United States District Court, Eastern District of Pennsylvania (the "Judicial District"); (2) a substantial part of the events or omissions giving rise to this action occurred in the Judicial District; and (3) Defendants reside in the Judicial District.

28.     There is a live controversy between the parties that includes a dispute over whether the Council's denial of the Conditional Use Application is consistent with federal and state law.

## **BACKGROUND**

### **The Important Federal Interests at Issue in this Case**

29.     As set forth in the Act and the FCC rules, regulations, and orders promulgated pursuant thereto, Congress has declared a public need for wireless communication services such as Personal Wireless Services and Telecommunications Services to be deployed without delay to the public.

30.     By enacting the Act, Congress: (1) sought to ensure federal control over radio frequencies and over the licensing, frequencies of operations, and technical standards applicable to the use of such frequencies; and (2) intended to "provide for a pro-competitive, deregulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies to all Americans." H.R. Rep. No. 104-458, at 206 (1996) (Conf. Rep.); *see* 1996 U.S. Code Cong. and Adm. News, p. 10; *see also City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005).

31.     Section 151 of the Act establishes a national policy to "make available, so far as possible, to all people of the United States, without discrimination . . . a rapid, efficient, Nation-

wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of national defense, [and] for the purpose of promoting safety of life and property through the use of wire and radio communications." 47 U.S.C. § 151. In furtherance of this goal, the Act authorizes the FCC to enforce the provisions of the Act in order to protect the ability of Personal Wireless Services providers and Telecommunications Services providers to deploy their systems nationwide.

32.     The FCC regulates the provision of Personal Wireless Services and Telecommunications Services to the public.

33.     The FCC grants licenses to providers of Personal Wireless Services to use limited resources, frequencies, and spectrum allocated by the FCC for the provision of such services to the public.

34.     These essential wireless services are needed to place those living and passing through the area on equal footing with homes, businesses, and travelers throughout the state who have access to wireless communication and data services, in furtherance of the national policy goal that Congress and the FCC have repeatedly confirmed (i.e., to facilitate the rapid deployment of wireless access so as to ensure that all Americans have access to this critical utility).

35.     The Act, while preserving state and local authority over the placement, construction, or modification of wireless facilities, expressly preempts state or local governments from effectively prohibiting the provision of Telecommunications Services and Personal Wireless Services and from implementing decisions that are not supported by substantial evidence.

36.     Sections 332(c)(7)(B) and 253(a) of the Act impose a number of procedural and substantive limitations on local zoning decisions and requirements to ensure that those decisions and requirements do not frustrate the Act's goals of promoting competition, higher quality services, and the rapid deployment of new telecommunications technologies.

37.     Section 332(c)(7)(B)(i) provides that:

The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof –

(I)     shall not unreasonably discriminate among providers of functionally equivalent services; and

(II)    shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

38.     Section 332(c)(7)(B)(ii) provides that:

A State or local government or instrumentality thereof shall act on any request for authorization to place, construct or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

39.     Section 332(c)(7)(B)(iii) requires that:

Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

40.     Section 332(c)(7)(B)(iv) provides that:

No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

41.     Section 332(c)(7)(B)(v) provides that:

Any person adversely affected by any final decision or failure to act by a State or local government or any instrumentality thereof that is

inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis.

42.    Section 253(a) provides that:

No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

43.    Verizon provides the infrastructure, such as the Facility, also known as a personal wireless services facility as defined by the Act, for the provision of mobile telephone and other Personal Wireless Services and Telecommunications Services in the State of Pennsylvania in accordance with its FCC licenses.

44.    Since Congress amended the Act in 1996, there has been a sea change in the manner in which Americans use wireless services.  According to the United States Department of Health and Human Services and CTIA – The Wireless Association, the percentage of adults and children living in wireless-only households has increased from 62.5% and 73.6% in the first half of 2020, respectively, to 72.6% and 81.9% as of the second half of 2022, respectively.[1] According to Numbering Resource Utilization Forecast (NRUF) and CTIA – The Wireless Association, the number of mobile devices in use has increased from 279.6 million in 2008, to 398.4 million in 2016, to over 523 million mobile devices in use today.[2]  Furthermore, according

---

[1] Wireless Substitution: Early Release of Estimates from the National Health Interview Survey, January-June  2020,  https://www.cdc.gov/nchs/data/nhis/earlyrelease/wireless202102-508.pdf Wireless Substitution: Early Release of Estimates from the National Health Interview Survey, July-December 2022, https://www.cdc.gov/nchs/data/nhis/earlyrelease/wireless202305.pdf.

[2] Annual Report and Analysis of Competitive Market Conditions with Respect to Commercial Mobile Services (2017) ¶ 19, p. 12; The Wireless Industry - Industry Data, https://www.ctia.org/the-wireless-industry/infographics-library.

to CTIA, wireless data usage has increased 190 fold from 2010 to 2022.[3]  These increases—combined with other changes in technology, applications, and usage—have generated a need for greater wireless coverage and capacity.

45.     Moreover, for Americans living in wireless-only homes and for those traveling outside of their homes, cell phones are often their only lifeline in emergencies.  The ability to reach 9-1-1 from one's wireless phone has become a vital public safety tool.  According to the National Emergency Number Association, "[a]n estimated 240 million calls are made to 9-1-1 in the U.S. each year.  In many areas, 80% or more are from wireless devices."  Sufficient network coverage and capacity are crucial to ensure these calls can reliably be completed.

46.     To meet the policy goals of the Act, Verizon utilizes several licenses issued by the FCC to provide a myriad of wireless services through an interlocking network of facilities that permit the efficient reuse of frequencies allocated to it by the FCC.

47.     To advance the national policies enumerated in the Act and underscored by numerous FCC Declaratory Rulings, Verizon must construct and maintain a network of "cell sites," each of which consists of antennas and related electronic communications equipment designed to send and receive radio signals over their licensed frequencies.

48.     Given the increase in wireless-only households, reliable access to Verizon's services from within structures by means of wireless devices ("in-building service") is crucial.

49.     For a wireless network to perform well, cell sites must be located, constructed and operated so that reliable service can be achieved.

---

[3] 2023 Annual Survey Highlights, https://www.ctia.org/news/2023-annual-survey-highlights.

**The Subject Property and the Applicable Township Zoning Laws**

50.     Pursuant to Sections 180-13 and 180-14 of the Zoning Ordinance, the Township is divided into certain "planned use or zoning districts."

51.     The Property is located in the Rural Agricultural District ("RA District").

52.     Pursuant to Section 180-20 of the Zoning Ordinance, the Facility, as a tower-based communication facility, is a conditionally permitted use in the RA District.

53.     Verizon requested conditional use approval of its Facility pursuant Sections 180-20(D)(3) and 180-127.1(A)(2)(a)[1](c) of the Zoning Ordinance.

a.     **Compliance with Setback Requirements**

54.     Ordinance   Sections   180-127.1(A)(2)(a)[1](a)   and   180-127.1(A)(2)(a)[5][d] require commercial communication towers outside of a right-of-way to be set back at least 1.5 times the tower height from property lines, existing residential dwellings, residential boundary lines where a tower is not permitted, and from occupied buildings.

55.     Based on the Facility's total structure height of 130 feet, a setback of 195 feet is required.

56.      The Facility would be set back at least 195 feet from all property lines and occupied buildings as it would be set back 202 feet from the northern property line; 264 feet to the southern property line; over 500 feet to the western property line; 225 feet to the eastern property line; and over 195 feet from the residential dwelling located on the Property.

57.     The Facility would also be setback over 500 feet from the R20 Zoning District where towers are not permitted.

58.     Accordingly, the Facility complies with all applicable setback requirements.

b.    **Compliance with Access Requirements**

59.    The only existing means of access to the Property is by Lewis Avenue, which was previously approved by the Township, and has been used for access to the Property for over eighteen (18) years.

60.    Lewis Avenue is a paper street as it is shown on the Township's maps, but was never opened by the Township.

61.    Pursuant to Pennsylvania State law, a property owner has rights of access to paper streets despite them not being officially opened.  Such property right is appurtenant to the land and may not be taken away, or impaired, unless just compensation is paid. *Chambersburg Shoe Mfg. Co. v. Cumberland Valley R. Co.*, 87 A. 968 (Pa. 1913).

62.    Section 180-127.1(A)(2)(g)[1] of the Zoning Ordinance requires that:

access shall be provided to the [F]acility by means of a public street or easement to/from a public street unless waived in writing by the Township Council.  The easement shall be a minimum of 20 feet in width and shall be improved to a width of at least 10 feet with a paved surface for its entire length.

63.    Access to the Facility is proposed via the existing access to the Owner's residence on the Property within a twenty-five-foot wide easement as provided in the Lease and as shown on the plans which would be paved as required.

64.    A width of ten (10) to twelve (12) feet would be paved.

65.    Accordingly, the Facility complies with all applicable access requirements.

**The Application and Hearing Process**

66.    On April 25, 2023, Verizon filed an application with the Zoning Heard Board requesting variances from: (1) the tower setback requirements set forth in Sections 180-127.1(A)(2)(a)[1][a] and 180-127.1(A)(2)(a)[5][d] of the Zoning Ordinance; (2) the paved access drive requirement set forth in Section 180-127.1(A)(2)(g)[1] of the Zoning Ordinance; and (3) to

the extent necessary, the landscaping requirements set forth in Sections 180-127.1(A)(2)(e)[2] and [4] of the Zoning Ordinance (the "ZHB Application").

67.     The ZHB scheduled a public hearing on the ZHB Application for June 29, 2023; however, Verizon requested that the hearing be rescheduled to the ZHB's next meeting on July 24, 2023 due to the fact that only three (3) of the five (5) ZHB members were available on June 29th.

68.     On July 17, 2023 and August 28, 2023, Verizon granted two additional extensions of time for the ZHB to hold a hearing on the ZHB Application.

69.     On September 18, 2023, Verizon withdrew its ZHB Application due to Verizon's identification of an alternate location on the Property that did not require any variance relief.

70.     On November 17, 2023, Verizon submitted to the Township Planning Commission and Council, *inter alia*, the following:

a.  Five (5) copies of the Conditional Use Application for the installation of the Facility at the alternate location on the Property that did not require any variance relief;

b.  Seventeen (17) copies of a Supplemental Statement in support of the Conditional Use Application;

c.  A check in the amount of $2,000.00 made payable to the Township, representing the escrow fee required by the Township;

d.  A check in the amount of $750.00 made payable to the Township, representing the application filing fee required by the Township;

e.  An executed Escrow Agreement required by the Township'

f.  Fifteen (15) 11" x 17" copies and two (2) large-size copies of the Facility site plans for site plan review;

13

g.  Four (4) copies of the current deed for the Property;

h.  One (1) copy of the redacted Lease; and

i.  Seventeen (17) copies of photo simulations of the Facility.

71.     On December 14, 2023, the Township Engineer issued a review letter for the Conditional Use Application (the "Engineer Review Letter").

72.     The Engineer Review Letter provided a list of items/information required for conditional use approval and site plan approval.

73.     On December 21, 2023, the Township Planning Commission held a public meeting on the Conditional Use Application and the site plan submission (the "Planning Commission Meeting").

74.     During the Planning Commission Meeting, Verizon's expert RF engineer, Andrew Petersohn of EBM Engineering, testified that "Verizon currently has a lack of reliable service in vehicle and in-building" impacting "all the residences and the other uses in th[e] area [to be serviced by the Facility] from [both] a . . . coverage standpoint and capacity standpoint" and that "[t]he proposed [F]acility will address [such deficiencies]."

75.     During the Planning Commission Meeting, Tom Carocci, Vice Chairman of the Planning Commission, shared the concern of the volunteer fire services that wireless service can be spotty at times.

76.     During the Planning Commission Meeting, counsel for Verizon advised the Planning Commission that: (1) Verizon did not have any issues with the information requested in the Engineer Review Letter; and (2) several of the items listed in the Engineer Review Letter could not be satisfied until after the Facility was granted conditional use approval.

77.     In fact, under well-established Pennsylvania State law, the items requesting specific engineering design details of the Facility cannot be required for conditional use approval.  *In Re:  Appeal of Drumore Crossings, L.P.*, 984 A.2d 589 (Pa. 2009) ("[a]n applicant cannot be required to provide specific engineering design details of its proposed development at the conditional use stage").

78.     The Planning Commission acknowledged that several of the items would be a part of the post-conditional-use-approval site plan review but specifically stated that Verizon "need[s] to identify the total amount of impervious cover that's proposed and that needs to include paving the driveway . . . for the conditional use [approval]."

79.     At the conclusion of the Planning Commission Meeting, the Planning Commission voted unanimously to recommend that the Council approve the Conditional Use Application and site plan approval subject to compliance with all items listed in the Engineer Review Letter.

80.     Following the Planning Commission Meeting, Verizon submitted to the Township Engineer a February 28, 2024 Geotechnical Investigation Report prepared and reviewed, respectively, by Michael Thomas and Joseph V. Borrelli, Jr., P.E., of Delta Oaks Group.

81.     The Council held public hearings on the Conditional Use Application on January 17, 2024, February 7, 2024, and March 20, 2024 (each individually referred to as "Council Hearing" or collectively as "Council Hearings").

82.     During the Council Hearings, Verizon's experts and counsel presented credible and uncontroverted evidence and testimony establishing: (1) the need for the Facility; (2) that the Facility is the least intrusive means to remedy such need; (3) and that the Facility satisfies the requirements for conditional use approval set forth in the Zoning Code.

83.     Verizon's expert radio frequency ("RF") engineer, Andrew Petersohn of dBm Engineering, P.C., (the "RF Expert") introduced into the administrative record a RF Design Analysis, dated December 18, 2023 (the "RF Justification Report") and testified to confirm the findings of his "independent evaluation and design review for the [Facility]."

84.     Based upon his review of Verizon's current network performance and the improvements that will be provided by the Facility, the RF Expert concluded as follows:

> the proposed facility is extremely well suited to provide enhanced wireless service in the northern portions of Lower Saucon Township and surrounding municipalities that currently suffer from unreliable coverage. Currently, the nearby Verizon Wireless facilities are not providing adequate in-building or in-vehicle coverage into the targeted geography resulting in service issues. The proposed facility is the only feasible alternative that will satisfy the design objective for affected areas. The design, location, and proposed antenna height is the least intrusive means of providing adequate service for Verizon Wireless subscribers in the targeted geography. The proposed antenna height is the absolute minimum acceptable to achieve a high percentage of the site's design goals.

RF Justification Report, p. 1.

85.     The RF Justification Report contains detailed existing coverage maps, which further confirm that:

> [t]here is a significant gap in reliable in-building and in-vehicle coverage in the mainly residential and commercial areas south of the Lehigh River between Riverside Drive and Skyline Drive that the [F]acility is designed to address.

*Id.* p. 2.

86.     The RF Justification Report also contains detailed propagation maps, which further confirmed that:

> The proposed facility will remedy the existing in-building and in-vehicle coverage issues and will enable reliable service inside the many residential commercial uses in the surrounding areas. Any decrease in the height of the proposed facility will significantly diminish the effectiveness of the proposed site.

*Id.* p. 3.

87.     During the Council Hearings, the RF Expert testified that the Facility will "add[] a significant portion of . . . strong in-building and strong in-car service, mainly to the geography bounded by the Lehigh River to the north and the ridgeline to the south" and "strong in-building coverage" to "a significant area across the river into Bethlehem Township[.]"

88.     The RF Expert further testified the Facility is needed to ensure that 9-1-1 calls can be made by Verizon's users in the area to be remedied by the Facility.

89.     The RF Expert further testified that the height of the Facility is "the minimum height necessary in order to address [the significant] gap in coverage" and that "there [are] no [existing] structures within 2 miles that [are] tall enough, that [are] available, and that [are] in the right location to meet the network need."

90.     During the Council Hearings, the RF Expert also introduced into the administrative record an Electromagnetic Exposure Analysis of the Facility (the "RF Emissions Compliance Report") and an Interference Analysis of the Facility (the "RF Interference Compliance Report"), each dated December 18, 2023, and testified to confirm the findings of his analyses.

91.     Specifically, that the RF emissions from the Facility would not only comply with, but would be "far below FCC exposure limits" and "as such [the Facility] is beyond regulation" by the Township "on the basis of the environmental effects of [RF] emissions[.]"  RF Emissions Compliance Report, pp. 1-2.

92.     The RF Expert further confirmed that "**no potential exists for the manifestation of harmful interference** as a result of the proposed [Facility]" and that "Verizon Wireless will be operating in full compliance with all applicable standards as outlined in their Federal Communications Commission licensure."  RF Interference Compliance Report, p. 1.

93.     Despite the fact that the issue of RF exposure is federally preempted, the Council not only allowed members of the public to voice concerns over the alleged health effects of RF emissions but in fact also read into the record an email from a non-Township resident, acknowledging that she had no personal stake in the matter (i.e., that "I do not live in Steel City and the cell phone tower will not impact me one bit") but nonetheless opposed the Facility due to, *inter alia*, the "negative impact on health and safety in the community."

94.     Moreover, in advance of each of the scheduled hearings on the ZHB Application and the Conditional Use Application, some of the Council members posted to their personal and Township Facebook pages an opposition flyer requesting that persons attend the hearings to express their opposition to the Facility and noting that such persons should care because, inter alia, the Facility "Increases Radio Frequency Radiation exposure to a densely populated residential area."

95.     During the Council Hearings, Verizon's expert Professional Engineer, Peter Albano, P.E., of Colliers Engineering & Design (the "Professional Engineering Expert"), introduced into the administrative record revised site plans for the Facility, dated January 12, 2024 (the "Revised Site Plans"), which addressed the Engineer Review Letter items that were required for conditional use approval, including the identification of the total amount of proposed impervious cover as specifically requested by the Planning Commission.

96.     During the Council Hearings, the Professional Engineering Expert also testified that the Facility would meet the required setbacks and that the generator at maximum capacity would be less than 60 decibels at the Property line.

97.     The Professional Engineering Expert further testified that Lewis Avenue is a paved road and has a deeded right-of-way, and thus, constitutes a road.

98.     The Professional Engineering Expert further testified that Lewis Avenue is maintained by the Property Owners and the other property owners that use Lewis Avenue.

99.     The Professional Engineering Expert also provided photographs of the existing paved condition of Lewis Avenue, which confirm that Lewis Avenue meets the requisite paved and access width for access to the Facility.

100.    The Professional Engineering Expert further testified that an evergreen screen will surround the base of the Facility consisting of deer resistant vegetation which screening would be taller than what is required by the Zoning Ordinance.

101.    The Professional Engineering Expert also presented a photo simulation package depicting what the Facility would look like if constructed at the proposed location, which photos were taken on January 8, 2024.

102.    The Professional Engineering Expert testified that the photo simulations confirm no visibility of the Facility in several areas of the Township and that only 30 to 50% of the Facility would be visible from certain noted areas of the Township.

103.    The Professional Engineering Expert further testified that that the monopole design was the least obtrusive design for the Facility.

104.    Despite this, the Professional Engineering Expert provided photosimulations of the Facility incorporating a monopine design (i.e., a monopole structure with fake branches attached to simulate a tree) for the Council's consideration, and confirmed Verizon's willingness to use a monopine structure if required or requested by the Council.

105.    The Professional Engineering Expert also provided uncontroverted evidence and testimony that the Facility would be designed in a manner in accordance with the industry standards and to accommodate co-location as required by the Zoning Ordinance.

106.    The Professional Engineering Expert further testified that any remaining Engineer Review Letter comments would be satisfied at the appropriate time.

107.    For example, that the stormwater issues would be addressed with the Township Engineer as part of the site plan review, and that a soils report would be submitted once the location of the Facility was confirmed by the Township as the soil samples would need to be taken at the specific location of the Facility.

108.    During the Council Hearings, Verizon's site acquisition representative, Susan Manchel, testified that she approached multiple property owners for the placement of the facility and either an owner did not want the facility on the property or would not permit use of existing structures.

109.    Ms. Manchel further testified that she had not approached those owners where a property was too small to meet the setback requirements, where approval of the use would require a use variance, or where a property was landlocked.

110.    During the Council Hearings, objectors to the Facility raised concerns of alleged health effects of RF exposure.

111.    However, the objectors failed to present any expert testimony regarding any issues to substantiate their claims.

112.    At the conclusion of the March 20, 2024 Council Hearing, two (2) of the Council members verbally voted to approve the Conditional Use Application, one (1) of the Council members recused herself from voting on the Conditional Use Application due to a conflict of interest (i.e., because she is an adjoining property owner to the Property), and two (2) of the Council members verbally voted to deny the Conditional Use Application, providing no basis for

denying the Conditional Use Application other than wanting additional time to deliberate on the Conditional Use Application.

113.    Under Pennsylvania State law, such a tied vote constitutes a non-passing vote.

114.    Accordingly, the Council voted to not approve the Conditional Use Application.

115.    On May 3, 2024, the Council issued to Verizon a one-page written decision (the "Denial") stating only as follows:

> Following oral argument, a motion was immediately made to grant the conditional use application.  One council member recused herself.  Accordingly, four council members voted.  Two council members voted to not approve and two voted to approve.

116.    In other words, the Council failed at any point through the present date, including during the Council Hearings or in its written Denial, to provide any substantive basis for denying the Conditional Use Application.

117.    Accordingly, the Denial is not supported by substantial evidence in the written record.

### IRREPARABLE INJURY, PUBLIC INTEREST AND THE BALANCE OF HARDSHIPS

118.    Verizon has demonstrated the need for the injunctive relief requested herein, including an order directing the Defendants to issue all necessary approvals for Verizon to construct and operate the Facility.

119.    As a result of the Defendants' actions, Verizon, its customers, and the public have been and will continue to be damaged and irreparably harmed absent the relief requested herein.

120.    The injury to Verizon affects: (a) its ability to provide its customers with the high-quality, reliable services they need and rightfully expect; (b) its ability to compete with other providers of Personal Wireless Services and Telecommunications Services; (c) the full use of its

existing FCC licenses and business investments; and (d) the goodwill of its customers and its business reputation.

121. The harm that Verizon has suffered and continues to suffer is not reasonably susceptible to accurate calculation and cannot be fully and adequately addressed through an award of damages.

122. Moreover, the public interest in promoting competition in the telecommunications arena and the rapid deployment of this evolving technology—the express goal of the Act—has been and will continue to be irreparably harmed by the Defendants' unlawful acts.

123. In addition, wireless telecommunications are an important component of public safety and emergency response systems, and provide a vital alternative to traditional landlines during times of public crisis.  By preventing Verizon from installing the Facility, which is necessary to provide reliable Personal Wireless Services and Telecommunications Services, the Defendants are causing irreparable harm to the public with deprivation or delay of reliable emergency communications.

124. In contrast to the immediate and irreparable injury being suffered by Verizon, its customers, and the public, the Defendants will suffer no significant injury if the Court issues the requested injunctive relief.  Moreover, Verizon has met all of the requirements for the approvals it seeks under controlling local codes, state and federal laws, and/or precedent.

## ALLEGATIONS SUPPORTING DECLARATORY RELIEF

125. A present and actual controversy has arisen and now exists between the parties regarding their respective legal rights and duties.  Verizon contends that the Defendants' actions are in violation of the Act and Pennsylvania State law and that it is entitled to all of the approvals necessary to proceed with the project.

126.  Verizon, its customers, and the public have been and will continue to be adversely affected by the Defendants' unlawful acts and any further delay in approval and construction of the Facility.

127.  Accordingly, declaratory relief is appropriate and necessary to adjudicate the extent of Verizon's rights and the Defendants' duties and authority.

### COUNT I

**Violation of 47 U.S.C. § 332(c)(7)(B)(iii) – The Denial of the Conditional Use Application Was Not Based on Substantial Evidence in the Written Record**

128.  Verizon realleges and incorporates by reference the allegations contained in all preceding paragraphs as if fully restated herein.

129.  Section 332(c)(7)(B)(iii) of Title 47 of the U.S. Code provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and *supported by substantial evidence contained in a written record*."  (Emphasis added).

130.  The substantial evidence claim turns on the validity of the denial under State law. *Cellular Tel. Co. v. Borough of Ho–Ho–Kus Zoning Bd. of Adj.*, 197 F.3d 64, 72 (3d Cir. 1999).

131.   Under Pennsylvania State law, the existence of a conditional use provision indicates legislative acceptance of the proposition that the use is appropriate on a property and should be denied only where the adverse impact on the public interest exceeds that which might be expected in the normal circumstances.  *In Re:  Appeal of the Estate of Achey*, 484 A.2d 874 (Pa. 1984), *aff'd.*, 501 A.2d 249 (Pa. 1985).

132.   Once an applicant satisfies its burden of meeting the specific conditional use requirements, a presumption arises that the use is consistent with the health, safety and welfare of the community.  *Tower Access Group, LLC v. South Union Township Zoning Hearing Board*,

192 A.3d 291 (Pa. 2018); *Berner v. Montour Township Zoning Hearing Board*, 176 A.3d 1058 (Pa. Cmwlth. 2019).

133.    The applicant does not have the burden to prove general, nonspecific or nonobjective standards, such as "compatibility with the neighborhood[.]" *Johnson v. North Strabane Township*, 546 A.2d 1334 (Pa. Cmwlth. 1988).

134.    The Property is located in the RA Zoning District.

135.    Pursuant to Section 180-20(D)(3) of the Zoning Ordinance, the Facility, as a tower-based commercial communication facility, is permitted by conditional use on the Property.

136.    The Conditional Use Application and supporting evidence and testimony satisfied the criteria specified in the Zoning Ordinance and under Pennsylvania State law.

137.    Specifically, Verizon and its experts presented undisputed, substantial, and credible evidence establishing that: (1) the Facility is the least intrusive means for Verizon to fill the significant gap in coverage, densify its network, introduce new services, and improve service capabilities in the Township and surrounding areas; (2) the Facility complies with all safety requirements; and (3) the Facility and the Conditional Use Application comply with all requirements for conditional use approval set forth in the Zoning Code, including in Section 180-127.1.

138.    The Denial completely ignores this evidence (i.e., the only evidence in the administrative record) and completely ignores the Planning Commission's recommendation that the Council approve the Conditional Use Application.

139.    The written record does not contain substantial evidence that would lead an objective and reasonable person to deny the Conditional Use Application.

140.    Accordingly, the Denial is not supported by substantial evidence in the written record.

141.    Moreover, "Section 332(c)(7)(B)(iii) requires localities to provide [its] reasons [for] deny[ing] applications to build cell phone towers" either "in the denial notice . . . or other written record issues essentially contemporaneously with the denial." *T-Mobile S., LLC v. City of Roswell*, 574 U.S. 293, 293.

142.    Here, the Denial states only as follows:

Following oral argument, a motion was immediately made to grant the conditional use application.  One council member recused herself.  Accordingly, four council members voted.  Two council members voted to not approve and two voted to approve.

143.    In other words, the Denial fails to set forth the Council's reasons for denying the Conditional Use Application.

144.    Defendants have failed to issue any other written record setting forth the Council's reasons for denying the Conditional Use Application.

145.    Accordingly, the Council's denial of the Conditional Use Application is, by definition, not supported by substantial evidence in the written record.

146.    The Denial is in violation of and preempted by 47 U.S.C. § 332(c)(7)(B)(iii) and must be set aside and enjoined by the Court.  Further, this Court should exercise its equitable power to issue an order directing Defendants to issue all local permits and approvals required to construct and operate the Facility.

## COUNT II

### Violation of 47 U.S.C. § 332(c)(7)(B)(i)(II) – Effective Prohibition of Service

147.    Verizon realleges and incorporates by reference the allegations contained in all preceding paragraphs as if fully restated herein.

148.    Section 332(c)(7)(B)(i)(II) of Title 47 of the U.S. Code provides that "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . *shall not prohibit or have the effect of prohibiting* the provision of personal wireless services."  (Emphasis added).

149.    Federal district courts review "effective prohibition" claims under the Act on a *de novo* basis, and such review is not limited to the record below.

150.    The FCC has confirmed that a state or local legal requirement constitutes an effective prohibition under Section 332 of the Act if it "materially limits or inhibits" a provider's ability to engage in any of a variety of activities related to its provision of a covered service.[4] The FCC explained that "[t]his test is met not only when filling a coverage gap, but also when densifying a wireless network, introducing new services or otherwise improving service capabilities."[5]

151.    Adopting the FCC's materially inhibit standard, the Third Circuit further explained that "not only does insufficiency in coverage ordinarily entitle a provider to [zoning approvals] but so does insufficiency in network capacity, 5G services, or new technology." *Cellco P'ship v. White Deer Twp. Zoning Hearing Bd.*, 74 F.4th 96, 106 (3d Cir. 2023).

152.    The Facility is needed and the least intrusive means for Verizon to fill the significant gap in coverage, densify its network, introduce new services, and improve service capabilities in the Township and surrounding areas.

---

[4] *Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Inv.* ("Third Report and Order"), 33 F.C.C.R. 9088, ¶ 40 n. 95 (2018), *aff'd in relevant part sub nom, City of Portland v. U.S.*, 969 F.3d 1020 (9th Cir. 2020), *cert. denied sub nom. City of Portland, Oregon v. Fed. Commc'ns Comm'n*, 141 S. Ct. 2855 (2021).

[5] *Id*. at ¶ 37 (internal citations omitted).

153.    The Denial violates Section 332 because it materially inhibits Verizon from providing personal wireless services in the Township and surrounding areas, and materially inhibits Verizon's ability "to provide existing services more robustly, or at a better level of quality, all to offer a more robust and competitive wireless service for the benefit of the public."[6]

154.    The Denial effectively prohibits the provision of personal wireless services in violation of § 332(c)(7)(B)(i)(II) of the Act. Accordingly, the Denial must be set aside and enjoined by the Court.  Further, this Court should exercise its equitable power to issue an order directing Defendants to issue all local permits and approvals required to construct and operate the Facility.

## COUNT III

## Violation of 47 U.S.C. § 253(a) – Prohibition of Service

155.    Verizon realleges and incorporates by reference the allegations contained in all preceding paragraphs as if fully restated herein.

156.    47 U.S.C. § 253(a) provides that "[n]o state or local statute or regulation, or other State or local legal requirement, may *prohibit or have the effect of prohibiting the ability* of any entity to provide any interstate or intrastate telecommunications service."  (Emphasis added).

157.    Section 253 also prohibits State or local authorities from erecting barriers that may prohibit or may have the effect of prohibiting the ability of any entity to provide telecommunications services, including taking action or inaction that results in an unreasonable delay in the deployment of the provider's facilities and provision of telecommunications services.[7]

---

[6] Third Report and Order at ¶ 40 n. 95.
[7] 47 U.S.C. § 253(a).

158.    The FCC has confirmed that a state or local legal requirement constitutes a prohibition under Section 253 of the Act if it "materially limits or inhibits" a provider's ability to engage in any of a variety of activities related to its provision of a covered service.[8]  The FCC explained that "[t]his test is met not only when filling a coverage gap, but also when densifying a wireless network, introducing new services or otherwise improving service capabilities."[9]

159.    The Third Circuit has further explained that "not only does insufficiency in coverage ordinarily entitle a provider to [zoning approvals] but so does insufficiency in network capacity, 5G services, or new technology." *Cellco P'ship v. White Deer Twp. Zoning Hearing Bd.*, 74 F.4th 96, 106 (3d Cir. 2023).

160.    The Facility is needed and the least intrusive means for Verizon to fill the significant gap in coverage, densify its network, introduce new services, and improve service capabilities in the Township and surrounding areas.

161.    The Zoning Ordinance and application review processes and criteria, as applied by Defendants, and the resulting Denial of the Conditional Use Application violates Section 253 because it materially inhibits Verizon from providing telecommunications services in the Township and surrounding areas, and materially inhibits Verizon's ability "to provide existing services more robustly, or at a better level of quality, all to offer a more robust and competitive wireless service for the benefit of the public."[10]

162.    Moreover, the Zoning Ordinance and application review processes and criteria, as applied by Defendants, and the resulting Denial of the Conditional Use Application obstructed,

---

[8] *Id.* at ¶¶ 34-40.
[9] *Id.* at ¶ 37 (internal citations omitted).
[10] Third Report and Order at ¶ 40 n. 95.

prevented, and barred entry to the deployment of Verizon's Telecommunications Services in the Township and surrounding areas.

163.    Furthermore, certain provisions of the Zoning Ordinance are facially in violation of and preempted by 47 U.S.C. § 253(a).

164.    For example, Section 180-127.1(A)(2)(a)[2] requires in pertinent part that "[a]n applicant for a tower-based (facility) must demonstrate that a significant gap in wireless coverage exists with respect to all wireless operators in the applicable area[.]"

165.    However, the "one-provider" requirement was specifically rejected by the FCC on the basis that existing or other providers in the area is inconsistent with the TCA's pro-competitive purpose. *See Sprint Spectrum, L.P. v. Willoth*, 176 F.3d 630 (2D Cir. 1999); *see also 2009 Declaratory Ruling*, 24 FCC Red. at 13994, 14014-19 (2009) (repudiating the "one-provider rule" and holding that Section 332(c)(7)(B)(i)(II), "applies not just to the first carrier to enter into the market, but also to all subsequent entrants").

166.    Furthermore, the Third Circuit has made it clear that "not only does insufficiency in coverage ordinarily entitle a provider to [zoning approvals] but so does insufficiency in network capacity, 5G services, or new technology." *Cellco P'ship v. White Deer Twp. Zoning Hearing Bd.*, 74 F.4th 96, 106 (3d Cir. 2023).

167.    Defendants' prohibitive Zoning Ordinance, processes, legal requirements, and Denial are in violation of and preempted by Section 253(a) of the Act, and must be set aside and enjoined on that basis. Further, this Court should exercise its equitable power to issue an order directing Defendants to issue all local permits and approvals required to construct and operate the Facility.

## COUNT IV

**Violation of 47 U.S.C. § 332(c)(7)(B)(iv) — The Denial of the Conditional Use Application Was Improperly Based on Perceived Environmental Effects of Radio Frequency Emissions**

168.  Verizon realleges and incorporates by reference the allegations contained in all preceding paragraphs as if fully restated herein.

169.  Pursuant to 47 U.S.C. §332(c)(7)(B)(iv), "[n]o State or local government or instrumentality thereof may regulate the placement, construction and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions."

170.  Verizon submitted with its Conditional Use Application uncontroverted evidence and expert testimony that the Facility would be completely compliant with, and in fact would be far below, the limits and rules set by the FCC regarding RF emissions.

171.  Strident community opposition to the Facility was based on the unfounded concerns of RF exposure.

172.  Despite Verizon's showing, Defendants capitulated to community opposition and denied the Application based upon the federally preempted issue of RF exposure.

173.  Specifically, Defendants relied upon the residents' unfounded concerns regarding the environmental effects of RF emissions.

174. The Defendants' Denial illegally regulates the placement, construction and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions in violation of 47 U.S.C. §332(c)(7)(B)(iv) of the Act. Accordingly, the Defendants' Denial must be set aside and enjoined on that basis. Further, this Court should

exercise its equitable power to issue an order directing Defendants to issue all local permits and approvals required to construct and operate the Facility.

## COUNT V

### The Council Abused its Discretion and Committed Error of Law in Violation of Pennsylvania State Law

175.   Verizon realleges and incorporates by reference the allegations contained in all preceding paragraphs as if fully restated herein.

176.   Under Pennsylvania State law, the existence of a conditional use provision indicates legislative acceptance of the proposition that the use is appropriate on a property and should be denied only where the adverse impact on the public interest exceeds that which might be expected in the normal circumstances.  *In Re:  Appeal of the Estate of Achey*, 484 A.2d 874 (Pa. 1984), *aff'd.*, 501 A.2d 249 (Pa. 1985).

177.   Once an applicant satisfies its burden of meeting the specific conditional use requirements, a presumption arises that the use is consistent with the health, safety and welfare of the community.  *Tower Access Group, LLC v. South Union Township Zoning Hearing Board*, 192 A.3d 291 (Pa. 2018); *Berner v. Montour Township Zoning Hearing Board*, 176 A.3d 1058 (Pa. Cmwlth. 2019).

178.   The applicant does not have the burden to prove general, nonspecific or nonobjective standards, such as "compatibility with the neighborhood[.]" *Johnson v. North Strabane Township*, 546 A.2d 1334 (Pa. Cmwlth. 1988).

179.   The Property is located in the RA Zoning District.

180.   Pursuant to Section 180-20(D)(3) of the Zoning Ordinance, the Facility, as a tower-based commercial communication facility, is permitted by conditional use on the Property.

181.    The Conditional Use Application and supporting evidence and testimony satisfied the criteria specified in the Zoning Ordinance and under Pennsylvania State law.

182.    Specifically, Verizon and its experts presented undisputed, substantial, and credible evidence establishing that: (1) the Facility is the least intrusive means for Verizon to fill the significant gap in coverage, densify its network, introduce new services, and improve service capabilities in the Township and surrounding areas; (2) the Facility complies with all safety requirements; and (3) the Facility and the Conditional Use Application comply with all requirements for conditional use approval set forth in the Zoning Code, including in Section 180-127.1.

183.    The Denial completely ignores this evidence (i.e., the only evidence in the administrative record) and completely ignores the Planning Commission's recommendation that the Council approve the Conditional Use Application.

184.    Nothing was introduced into "the record to indicate that [the Facility] would not comply with the [Zoning] Ordinance[,]" and thus, any "findings [of non-compliance] cannot be substantiated." *Sobel Construction Company v. Zoning Board*, 329 A.2d 912 (Pa. Cmwlth. 1974).

185.    Accordingly, the Council's action in denying the Conditional Use Application was arbitrary, capricious, an abuse of discretion, contrary to law and not supported by substantial evidence.

186.    Furthermore, Section 913.2(b)(1) of the Pennsylvania Municipalities Planning Code (MPC) requires that:

> the governing body shall render a written decision or, where no decision is called for, make written findings on the conditional use application within 45 days after the last hearing before the governing body.  Where the application is contested or denied, each decision shall be accompanied by findings of fact or conclusions based

thereon, together with any reason therefor.  Conclusions based on any provisions of this act or of any ordinance, rule or regulation shall contain a reference to the provision relied on and the reasons why the conclusion is deemed appropriate in the light of the facts found.

53 P.S. §10913.2.

187.  Section 913.2(b)(2) of the MPC provides that:

Where the governing body fails to render the decision within the period required by this subsection or fails to commence, conduct or complete the required hearing as provided in section 908(1.2), the decision shall be deemed to have been rendered in favor of the applicant unless the applicant has agreed in writing or on the record to an extension of time. When a decision has been rendered in favor of the applicant because of the failure of the governing body to meet or render a decision as hereinabove provided, the governing body shall give public notice of the decision within ten days from the last day it could have met to render a decision in the same manner as required by the public notice requirements of this act. If the governing body shall fail to provide such notice, the applicant may do so.

*Id.*

188.    Section 180-12.1(D)(3) and (4) of the Zoning Code mirror Sections 913.2(b)(1)

and (2) as they respectively provide that:

The governing body shall render a written decision or, when no decision is called for, make written findings on the conditional use application within 45 days after the last hearing before the governing body. Where the application is contested or denied, each decision shall be accompanied by findings of fact or conclusions based thereon, together with any reasons therefor. Conclusions based on any provisions of this chapter or of any ordinance, rule or regulation shall contain a reference to the provision relied on and the reasons why the conclusion is deemed appropriate in the light of the facts found.

. . .

Where the governing body fails to render the decision within the period required by this subsection . . . the decision shall be deemed to have been rendered in favor of the applicant unless the applicant has agreed in writing or on the record to an extension of time. When a decision has been rendered in favor of the applicant because of the failure of the governing body to meet or render a decision as hereinabove provided, the governing body shall give public notice of the decision within ten days from the last day it could have met to render a decision in the same manner as required by the public notice requirements of this chapter. If the governing body shall fail to provide such notice, the applicant may do so.

189.    The Denial states only as follows:

Following oral argument, a motion was immediately made to grant the conditional use application.  One council member recused herself.  Accordingly, four council members voted.  Two council members voted to not approve and two voted to approve.

190.    Accordingly, the Denial lacks findings of facts and conclusions, and thus, is in violation of Section 913.2 of the MPC and Section 180-12(D)(3) of the Zoning Ordinance.

191.    For the foregoing reasons, Verizon is entitled to a judgment and an order compelling Defendants to issue to Verizon all local permits and approvals required to construct and operate the Facility.

**WHEREFORE**, Verizon respectfully demands judgment of this Court on the Counts set forth above as follows:

1.    On Count I, an order and judgment finding and declaring that the Denial was not based on substantial evidence contained in the written record in violation of § 332(c)(7)(B)(iii) of the Act, and mandating that Defendants immediately issue to Verizon all permits and approvals required to construct and operate the Facility.

2.    On Count II, an order and judgment finding and declaring that the Defendants have effectively prohibited the provision of personal wireless services in violation of § 332(c)(7)(B)(i)(II) of the Act, and mandating that Defendants immediately issue to Verizon all permits and approvals required to construct and operate the Facility.

3.    On Count III, an order and judgment finding and declaring that the Defendants have prohibited the provision of telecommunications services in violation of § 253(a) of the Act, and mandating that Defendants immediately issue to Verizon all permits and approvals required to construct and operate the Facility.

4.     On Count IV, an order and judgment finding and declaring that Defendants improperly based the Denial on the environmental effects of radio frequency emissions in violation of § 332(c)(7)(B)(iv) of the Act, and mandating that Defendants immediately issue to Verizon all permits and approvals required to construct and operate the Facility.

5.     On Count V, an order and judgment finding and declaring that Defendants' Denial is arbitrary and capricious, an abuse of discretion, contrary to law, and not supported by substantial evidence, in violation of Pennsylvania State law, and mandating that Defendants immediately issue to Verizon all permits and approvals required to construct and operate the Facility.

6.     On all Counts, an order: (1) granting permanent injunctive relief prohibiting Defendants from taking any further action that would prohibit or have the effect of prohibiting Verizon from providing Personal Wireless Services and Telecommunications Services to the Township and surrounding areas from the Facility; and (2) awarding to Verizon its costs, expenses, and attorney fees, and any and all other damages and interest to which Verizon is lawfully entitled, together with such other and further relief at law or equity as the Court deems just and proper.

Dated: Allentown, Pennsylvania
        May 31, 2024

**FITZPATRICK LENTZ & BUBBA, P.C.**

By: */s/ Catherine E. N. Durso*
     Catherine E. N. Durso, Esq.
     PA 73622
     Two City Center
     645 West Hamilton Street, Suite 800
     Allentown, Pennsylvania 18101
     Tel. (484) 788-0606
     Fax (610) 797-6663
     kdurso@flblaw.com

**SNYDER & SNYDER, LLP**

By: /s/ *Robert D. Gaudioso*
    Robert D. Gaudioso, Esq.
    NY 2693034
    (Petition for Special Admission Forthcoming)
    Jonathan D. Kaufman, Esq.
    NY 5742663
    (Petition for Special Admission Forthcoming)
    94 White Plains Road
    Tarrytown, New York 10591
    Tel. (914) 333-0700
    Fax (914) 333-0743
    rgaudioso@snyderlaw.net
    jkaufman@snyderlaw.net

    *Attorneys for Plaintiff*